JUDGE GARDEPHE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAL INTERNATIONAL CONTAINER CORP.,

                    Plaintiff,

        -against-

IAL CONTAINER LINE (UK) LTD.

                    Defendant.

**'09 CV 7892**

**VERIFIED COMPLAINT**

Plaintiff TAL International Container Corp. ("Plaintiff" or "TAL"), by its attorneys Vedder Price P.C., for its complaint against defendant IAL Container Line (UK) Ltd. ("Defendant" or "IAL-UK"), alleges as follows:

### JURISDICTION AND VENUE

1.      This is an action within the admiralty and maritime jurisdiction of this Court and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333.

2.      Venue in this district is proper pursuant to 28 U.S.C. 1391(d) and the contractual agreement of the parties.

### THE PARTIES

3.      Plaintiff TAL is a corporation organized and existing under the laws of Delaware with an office and principal place of business at 100 Manhattanville Road, Purchase, New York.

4.    Defendant IAL-UK is a foreign corporation organized under the laws of the United Kingdom with its principal place of business at 401 Al Jawharah Building, Dubai, United Arab Emirates.

5.    Upon information and belief, IAL-UK is a non-vessel owning common carrier that provides liner-shipping services across the Middle East, the Indian Sub-Continent, South East Asia and the Far East.

## THE LEASE AGREEMENTS

6.    TAL leased approximately 1,000 new dry cargo containers built with IAL-UK's marks and logos on them as well as certain open top and flush folding flat rack containers pursuant to the following container lease agreements:

>    LEASE AGREEMENT dated June 1, 1992 (the "Master Lease"), a copy of which is annexed hereto as Exhibit A.

>    LEASE ADDENDUM NO. 1 dated October 1, 2007, Billing Code IDAK9, incorporated into the Master Lease, a copy of which is annexed hereto as Exhibit B.

>    LEASE ADDENDUM NO. 2 dated December 1, 2007, Billing Code MIDA2F/-001/-002, incorporated into the Master Lease, a copy of which is annexed hereto as Exhibit C.

>    AMENDMENT to LEASE ADDENDUM NO. 1dated November 1, 2008, a copy of which is annexed hereto as Exhibit D.

The Master Lease, Lease Addenda and Lease Amendments referenced above are collectively referred to herein as the "Lease Agreements."

7.    The Lease Agreements are governed by the law of the State of New York.

### FIRST CAUSE OF ACTION

[Breach of Lease Agreements]

8.      Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 6 of this Complaint as if fully set forth herein.

9.      The failure to pay rent and other amounts due under the Lease Agreements constitutes an Event of Default under and pursuant to the Master Lease.

10.      Defendant defaulted under the Lease Agreements beginning in or about June 2009 by failing to pay rentals and other amounts when and as due thereunder.

11.      The Master Lease provides that, upon the occurrence and continuance of an Event of Default, TAL may declare the Lease Agreements in default, whereupon the entire unpaid balance of rentals becomes immediately due and payable.

12.      The Master Lease further provides that, upon the occurrence and continuance of an Event of Default, TAL may proceed by appropriate court action to enforce the terms of the Lease Agreements and/or recover damages for breach.

13.      The Master Lease further provides that, upon the occurrence and continuance of an Event of Default, TAL may repossess the containers then on lease to IAL-UK.

14.      The Master Lease provides that, in the event IAL-UK fails to return containers to TAL following a default, IAL-UK will be liable for, and TAL may recover from, IAL-UK as liquidated damages, the agreed stipulated loss value of the containers.

15.      The Master Lease provides for the application of default interest in the amount of 2% per month on any rentals that are not paid when and as due.

16.    On September 11, 2009, TAL sent a written notice of default to Defendant (the "Default Notice") via e-mail, facsimile, and FedEx, in which TAL demanded payment of all overdue amounts. A copy of the Default Notice is attached hereto as Exhibit E.

17.    The Default Notice specifically notified IAL-UK that, as a result of the defaults described therein, TAL was then exercising its right to accelerate all future rentals under the Lease Agreements and demand the return of all containers.

18.    By reason of the foregoing, Defendant is indebted to TAL in the amount of $1,983,509.94 as of September 11, 2009, as near as can now be determined. Attached hereto as Exhibit F is a schedule which illustrates TAL's claim against Defendant.

19.    TAL seeks a maritime attachment against the Defendant's tangible and intangible property pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims (the "Supplemental Rules") of the Federal Rules of Civil Procedure and, in furtherance thereof, avers that its claims herein are maritime claims and that IAL-UK cannot be "found" within the District within the meaning of Supplemental Rule B(1).

**WHEREFORE**, Plaintiff TAL International Container Corp. demands judgment as follows:

A.    That process in due form of law may issue against Defendant IAL Container Line (UK) Ltd., citing it personally to appear and answer all and singular the matters aforesaid;

B.    That Process of Maritime Attachment and Garnishment be issued by the Clerk of Court pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure providing for the attachment of all tangible and

intangible personal property of Defendant IAL Container Line (UK) Ltd., in the amount of $1,983,509.94, the amount sued for, together with interest, costs and disbursements, if such Defendant cannot be found within the District;

C.    That this Court shall pronounce judgment in favor of Plaintiff TAL International Container Corp. against Defendant IAL Container Line (UK) Ltd., in an amount not less than $1,983,509.94, plus interest, costs and attorneys' fees, for its damages as aforesaid; and

D.    That this Court may grant to Plaintiff such other and further relief as may be just and proper.

Dated: New York, New York
       September 14, 2009

VEDDER PRICE P.C.

By: _____
    Michael G. Davies (MD 6045)
    John E. Bradley (JB 2485)
    Valerie J. Bluth (VB 4246)
    1633 Broadway, 47th Floor
    New York, New York 10019
    (212) 407-7700

    *Attorneys for Plaintiff*
    *TAL INTERNATIONAL CONTAINER*
    *CORP.*

## VERIFICATION

STATE OF NEW YORK            )
                             ) ss.:
COUNTY OF WESTCHESTER        )

MARC A. PEARLIN, being duly sworn, deposes and says:

I am Vice President, General Counsel and Secretary of TAL INTERNATIONAL CONTAINER CORPORATION, the Plaintiff in this action.  I have read the foregoing complaint and know the contents thereof, and the same is true to the best of my knowledge, information, and belief.  The sources of my information and the grounds for my belief are corporate records and communications maintained by the Plaintiff in the ordinary course of business.

_____
Marc A. Pearlin

Sworn to before me this
11th day of September, 2009

_____
Notary Public

SUSANNE C. SMITH
Notary Public, State of New York
No. 4969047
Qualified in Dutchess County
Commission Expires July 9, 2010

# EXHIBIT A

**TRANSAMERICA LEASING**

Transamerica
Leasing Inc.
711 Westchester Avenue
White Plains, NY 10604-3560
Telephone 914 682-3300
Telex 62373 ICSNY
Fax 914 397-2526

# Master Lease Agreement
(GENERAL TERMS & CONDITIONS)

This Lease is entered into by and between TRANSAMERICA LEASING INC., incorporated under the laws of Delaware, with its principal

place of business at 711 Westchester Avenue, White Plains, New York 10604-3560 ("Transamerica") and _____

_____ IAL Container Line (UK) Ltd _____,
(name)

incorporated under the laws of _the United Kingdom_____, with its principal place of business at

_401, Al Jawharah Building, Dubai U.A.E_____ ("Lessee").
(address)

WHEREAS, Transamerica has available, on a rental basis, a supply of containers, chassis and other related equipment ("Equipment") through a worldwide Transamerica depot system; and

WHEREAS, Lessee desires or may desire to avail itself of said Equipment.

NOW, THEREFORE, in consideration of the mutual covenants expressed herein, the Parties agree that:

## 1. ACCEPTANCE OF EQUIPMENT

Lessee may, from time to time, or as may be otherwise agreed between the Parties, lease Transamerica Equipment. The right of Lessee to obtain Equipment is, unless otherwise agreed, subject to its availability. At the time of receipt of Equipment by Lessee, Lessee or its authorized agent and the authorized Transamerica depot shall jointly and simultaneously execute an Equipment Interchange Receipt ("E.I.R.") on the form prescribed by Transamerica and thereupon, the Equipment covered thereby shall become subject to the terms and conditions hereof. All Equipment shall be deemed to be in good condition except as may be expressly noted on the E.I.R. signed by Lessee or its authorized agent and the Transamerica depot at the time of receipt of Equipment. Any third party which receives Equipment on behalf of Lessee shall be deemed to have authority on behalf of Lessee to execute an E.I.R. Any Equipment picked up by or received by Lessee or a representative of Lessee or coming under the direct or indirect control of Lessee shall be subject to the terms and conditions of this Lease.

## 2. RENTAL AND OTHER CHARGES

Lessee shall pay rent to Transamerica at such rates as are agreed upon at or prior to the receipt of Equipment. Said rates, unless otherwise agreed, shall commence on and be charged to Lessee beginning on and including the day of receipt of Equipment and shall continue to be charged to and including the day on which the Equipment is taken off lease pursuant to Paragraph 9 hereof. Transamerica will bill Lessee monthly for rent and other charges. Lessee shall pay Transamerica invoices in U.S. currency at the address set forth above or as otherwise directed by Transamerica in full, without deduction for any reason whatsoever, within 30 days from date of invoice. Payments overdue will be subject to a service charge equal to the lesser of 2% per month or the highest legal rate. In addition to the payment of rentals, Lessee shall pay or reimburse Transamerica for any and all sales and use taxes, personal property taxes, or other direct taxes levied against or based upon the use, storage, operation or possession by Lessee of the Equipment leased hereunder, or levied against or based upon the amount of rentals paid or to be paid hereunder, or any other taxes levied against or based upon this Lease or the execution, filing, recording or performance thereof. The term "direct taxes" as used herein shall include all taxes (except taxes which are based upon or measured by Transamerica's net income), charges and fees levied, assessed or charged by any taxing authority.

## 3. DEPOT CHARGES

Unless otherwise agreed in writing, Lessee shall pay to Transamerica, or to a Transamerica depot if directed by Transamerica, any in-and-out lifting, loading and other charges in connection with the receipt and return of Equipment (including, but not limited to, charges incurred in connection with surveys requested by Lessee). Lessee shall reimburse Transamerica for any costs or expenses Transamerica may incur due to the failure of Lessee to pay any of the foregoing costs and charges.

## 4. MAINTENANCE AND REPAIR OF EQUIPMENT WHILE ON LEASE

Lessee agrees, at Lessee's sole cost and expense, to maintain Equipment at all times during the term of this Lease in good repair and operating condition and in a safe condition pursuant to the International Convention for Safe Containers, free of any and all liens and encumbrances. All repairs made by Lessee shall be of good quality and in accordance with Transamerica standards as from time to time issued.

## 5. LOCATION AND USE OF EQUIPMENT

Lessee shall not make or permit any unlawful use or handling of the Equipment. Lessee shall comply with all loading limitations prescribed by the manufacturer of the Equipment and shall prevent excessive impact and concentrated loads. Lessee shall not use Equipment for storage or transportation of corrosive substances, hazardous materials, hazardous wastes, high density poorly secured materials, bulk commodities which may corrode, oxidize, severely dent, puncture, contaminate, stain or damage the interior or exterior of Equipment or could result in injury or damage to subsequent users of Equipment or make any other use of Equipment which could result in such injury or damage. Lessee shall not, without Transamerica's prior written consent, make or permit any changes, alterations, or improvements in or to the Equipment or remove therefrom any parts, accessories, attachments, or other equipment. Equipment returned with accessories, attachments, or other items missing will continue to be considered as rented Equipment until the missing items are returned or replacement cost is paid or if changes were made to the Equipment, until the Equipment has been restored to its condition at time of receipt by Lessee. Lessee will maintain records showing the location of the Equipment and will, upon Transamerica's request, promptly advise Transamerica in writing of the location of the Equipment.



6. **COMPLIANCE WITH LAWS**

Lessee shall, at its own cost and expense, comply with all laws, regulations or orders of federal, state, foreign and local governments or agencies which in any way affect the Equipment or the use, operation or storage thereof. Lessee shall exercise such responsibilities as would otherwise be Transamerica's under the International Convention for Safe Containers and such responsibilities shall be carried out in accordance with Transamerica's operational procedures in effect from time to time. Lessee shall comply with all requirements of any Customs Convention on Containers, including all obligations of the operator and relating to temporary admission, transport under customs seal, maintenance of records and reporting to governmental and other authorities. Lessee agrees to hold Transamerica harmless from any fines, penalties, forfeitures or seizures which may arise from the violation of any such law, rule, regulation or order.

7. **CASUALTIES**

If Equipment, while rented to Lessee, is damaged beyond repair, lost, stolen, destroyed, or confiscated, Lessee's obligation to pay rental therefor shall terminate as of the day Transamerica receives full settlement for such Equipment. Full settlement shall consist of proof of such occurrence and receipt of the replacement value thereof as determined by Transamerica. Lessee acknowledges that Lessee has been advised of Transamerica's replacement values.

8. **RETURN OF EQUIPMENT**

All Equipment obtained by Lessee from an authorized Transamerica depot shall be returned by Lessee to the authorized Transamerica depot or depots which have been agreed to by the Parties in writing.

9. **REPAIRS UPON RETURN OF EQUIPMENT**

Equipment will be inspected upon its return to the agreed upon Transamerica depot. If the Equipment is in the same condition as when obtained by Lessee, normal wear excepted, the Transamerica depot shall so indicate on an E.I.R., and the Equipment shall be taken off lease. If Equipment is damaged, the Transamerica depot shall notify Lessee or its authorized agent. Lessee shall, in writing, authorize the Transamerica depot to proceed with the repairs. All such repairs shall be made at the cost and expense of Lessee. If Lessee fails to give authorization to make the repairs within five days from the date Lessee was notified of such damage, Transamerica will have the repairs made for the account of Lessee. Upon satisfactory completion of the repairs, the Equipment shall be taken off lease.

10. **EXCLUSION OF WARRANTIES**

Transamerica makes no representations or warranties (i) as to the condition of Equipment (ii) that Equipment meets the requirements or regulations of any country or other political subdivision within which Lessee may use or operate the Equipment, or (iii) as to the Equipment's suitability for any purpose. ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PURPOSE, ARE HEREBY WAIVED BY LESSEE.

11. **INDEMNIFICATION**

Lessee agrees to defend at its own cost and expense, and to indemnify and hold harmless Transamerica, its agents, indemnitees and employees, from and against, any and all losses, claims (including, without limitation, any cargo claims), actions, costs, expenses, fees, damages, fines and liabilities (including reasonable attorneys' fees), however caused and irrespective of whether caused in whole or in part by the negligence of Transamerica, resulting directly or indirectly in any manner from the lease, operation, use, storage or possession of Equipment by Lessee or the performance of this Lease by Lessee.

12. **INSURANCE**

Unless waived by Transamerica in writing, Lessee shall, at its own cost and expense, maintain the following minimum amounts of insurance, with insurance companies acceptable to Transamerica and shall furnish Transamerica with certificates of such insurance. At Transamerica's request, Lessee will furnish Transamerica with copies of each insurance policy with endorsements.

A (1). All Risks Physical Damage Insurance in an amount equal to the value of all Equipment charged to it while on land, afloat, in transit or at rest anywhere in the world, including particular average and general average. Such insurance shall be endorsed with a Loss Payable Clause in favor of Transamerica as respects Transamerica's property.

A (2). Comprehensive General Liability Insurance, including Contractual Liability, against claims for bodily injury or death and property damage in an amount not less than $5,000,000 per occurrence. Said insurance shall be endorsed to name Transamerica as an Additional Insured.

A (3). Automobile Liability Insurance against claims for bodily injury or death and property damage in an amount not less than $5,000,000 per occurrence. Said insurance shall be endorsed to name Transamerica as an Additional Insured.

B. The certificates and policies evidencing the insurance required above shall contain a clause providing that (i) the policies shall be considered primary as against any other valid insurance coverages, and (ii) 30 days' prior written notice must be given to Transamerica if the policies are cancelled, materially changed or not renewed.

C. The maintenance of insurance by Lessee shall *not* be deemed or construed to limit Lessee's obligations under this Lease, including, but not limited to obligations under Paragraph 11 hereof.

13. **OWNERSHIP RIGHTS**

Equipment shall at all times remain the property of Transamerica, and Lessee shall not acquire any ownership rights, title or interest of any nature in the Equipment by virtue of paying rental, cost of repair, registration or licensing fees, property or other

taxes, fees or levies, costs of transporting Equipment, complying with or exercising any of Transamerica's responsibilities under the International Convention for Safe Containers, including, but not limited to, maintenance and examination of containers by Lessee, or otherwise. The transactions covered by this Lease are transactions of leasing only, and not a sale, conditional or otherwise, and the only right acquired by Lessee hereunder is the right to possess and use Equipment leased hereunder so long, and only so long, as Lessee shall not be in default hereunder.

## 14.  IDENTIFYING MARKS

Unless otherwise agreed in writing, Equipment shall have Transamerica serial numbers and other identifying marks affixed thereto which shall not be obliterated or altered by Lessee. The Parties shall use such serial and identification marks in all correspondence, invoices and other written and verbal communications in reference to Equipment.

## 15.  ASSIGNMENT AND SUBLEASE

Transamerica may assign all or any part of its right, title or interest under this Lease, including the rent due and to become due. Lessee shall not, without Transamerica's prior written consent, sublease any Equipment or assign or encumber this Lease or any interest therein, in whole or in part, or hypothecate or encumber any Equipment.

## 16.  TIME IS OF THE ESSENCE

Time is of the essence of this Lease.

## 17.  DEFAULT

If any of the following events shall occur and be continuing:

A. Lessee shall fail to pay any sum or sums to be paid hereunder when the same become due; or

B. Lessee shall fail to observe or perform any other term or condition of this Lease in the manner and at the time or times required herein, and any such failure remains unremedied for five days after written notice thereof to Lessee by Transamerica; or

C. Transamerica becomes aware of any fact which causes it to reasonably deem itself insecure; or

D. Lessee shall admit in writing its inability to pay its debts, or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Lessee seeking to adjudicate it a bankrupt or insolvent (i.e., unable to pay its debts as they fall due), or seeking reorganization, arrangement, adjustment, or composition of it or its debts under any law relating to bankruptcy, insolvency or reorganization or relief to debtors, or seeking appointment of a receiver, trustee, or other similar official for it or for any substantial part of its property; or Lessee shall take any corporate action to authorize any of the actions set forth above; or

E. The seizure or nationalization of Lessee or a material part of Lessee's assets by any government or any governmental instrumentality; or

F. A default by a guarantor under the terms of any guaranty agreement between Transamerica and any third party guaranteeing the obligations of Lessee hereunder;

then in any such event:

(i) Lessee's rights to possession of all Equipment leased hereunder shall terminate and Transamerica shall have the right to take immediate possession of all such Equipment, and any damages occasioned by any such taking of possession are hereby specifically waived by Lessee;

(ii) If Equipment is on lease for a stated term, the entire unpaid balance of the rent for the entire term of the Lease shall forthwith become due and payable;

(iii) Transamerica shall have the right to rent the Equipment or any portion thereof to such persons and under such terms as Transamerica may elect and after deducting all costs and expenses incurred in connection therewith, apply any rent received to the rent due from Lessee to Transamerica hereunder by acceleration or otherwise; and

(iv) Lessee shall pay to Transamerica any reasonable attorneys' fees and expenses Transamerica incurred in enforcing its rights hereunder.

The foregoing shall *not* be construed to limit any and all other remedies available to Transamerica for a default or breach of this Lease.

## 18.  WAIVERS

A. No express or implied waiver by Transamerica of any default hereunder shall in any way be construed to be a waiver of any future or subsequent default of Lessee, or a waiver of any rights of Transamerica hereunder, or a modification of any of the terms of this Lease or any extension or enlargement of Lessee's rights hereunder.

B. If Lessee is owned, directly or indirectly, in whole or in part, by any country or sovereign or is an authority or agency of any country or sovereign, then Lessee hereby waives any and all rights and immunities, including, without limitation, any immunities from prejudgment seizure, arrest or attachment it may have under the Foreign Sovereign Immunities Act of 1976 (28 USC §1602, *et seq.*) as amended or any similar type statute, law, rule or regulation of any country or sovereign.

## 19.  LIENS

If Lessee is an ocean carrier, then Transamerica and Lessee agree that the primary and paramount purpose of the lease of Equipment hereunder is to enable Lessee to offer international ocean carriage of containerized cargo aboard vessels owned, chartered or operated by Lessee and that such leased Equipment is essential and necessary for that service. The Parties further agree that this Lease is a maritime contract. Equipment is furnished by Transamerica to vessels owned, chartered or operated by Lessee and for the completion of voyages thereon, and that any Equipment furnished to Lessee hereunder is also furnished to any vessel on which the Equipment is used. Transamerica is expressly relying upon the credit of the vessels, even if final delivery to the vessels is effected by Lessee. Transamerica reserves and Lessee recognizes and grants to Transamerica an express maritime lien against said vessels and their pending freight, to secure all obligations running from Lessee to Transamerica under this Lease. In addition, and not in limitation of all other remedies enumerated in this Lease, Transamerica may execute its maritime lien on vessels owned, chartered or operated by Lessee by appropriate process in any court of any country having general admiralty and maritime jurisdiction.

**20. FINANCIAL REPORTS**

Within 45 days after the close of each of the first three quarters of Lessee's fiscal year, Lessee shall deliver to Transamerica a copy of Lessee's unaudited balance sheet and statement of income for each such quarter. Within 120 days after the close of Lessee's fiscal year, Lessee shall deliver to Transamerica an audited balance sheet and statement of income and retained earnings as of the close of such fiscal year, and the notes thereto.

**21. TERMINATION**

Unless otherwise agreed in writing, either Party may terminate this Lease at any time by serving 30 days' written notice on the other Party at the address written above. In the event of termination, Lessee shall deliver all Equipment to Transamerica at the Transamerica depot or depots mutually agreed upon or absent such agreement, to the place or places designated by Transamerica. Lessee shall pay to Transamerica the agreed rental for Equipment hereunder, and all other terms and conditions of this Lease will continue in effect, until all Equipment has been redelivered to and accepted by Transamerica. Such termination shall not, however, relieve Lessee from any liabilities and obligations incurred under this Lease prior to such delivery. This right of termination, however, shall not apply to any Equipment which Lessee has received pursuant to a written agreement or addendum to this Lease (i) which obligates Lessee to pay rental for a stated period of time, or (ii) which contains a stated term.

**22. JOINT AND SEVERAL LIABILITY**

If there is more than one Lessee to this Lease, each Lessee shall be jointly and severally liable for the obligations of the "Lessee" under this Lease. Transamerica may suspend this Lease or declare this Lease to be in default if a controversy or dispute should arise between such Lessees which, in the opinion of Transamerica, may materially impair the performance of the terms of this Lease by such Lessees; and, in such event, the remedies provided in Paragraph 17 hereof shall apply.

**23. JURISDICTION**

Transamerica and Lessee hereby agree that any claim or controversy, directly or indirectly arising out of or relating to this Lease, may be litigated in the state or federal courts located in the State of New York, U.S.A., and Transamerica and Lessee hereby consent to be subject to the jurisdiction of such courts. Transamerica and Lessee agree that service of process upon the other may be made by mailing a copy (by registered or certified mail) postage prepaid, addressed to the respondent at the address shown above or by telecopier sent to the respondent's telecopier number. If service is by mail, service shall be complete seven days after such process has been mailed to the respondent. If service is by telecopier, service shall be complete when such process is actually received. Nothing herein shall affect the right of either Party to serve legal process in any other manner permitted by law or affect the right of either Party to bring any action or proceeding against the other Party or its property in the courts of any other jurisdiction. This Lease shall be governed by the laws of the State of New York, U.S.A.

**24. SUBORDINATION**

This Lease is executed by Transamerica in respect of the Equipment and is made subordinate to any chattel, mortgage, pledge, security agreement, conditional sales contract, lease or like agreement applicable to the Equipment to which Transamerica is bound.

**25. SEVERABILITY**

The provisions of this Lease are separable, and if, upon judicial interpretation or construction, any provision is determined to be prohibited by law, such provision shall be ineffective to the extent of such prohibition, without invalidating the remaining provisions of this Lease.

**26. FORCE MAJEURE**

Transamerica will be free from liability for failing to perform hereunder due to acts of God, war, labor difficulties, fire or other causes beyond its control.

**27. CONSEQUENTIAL DAMAGES**

Under no circumstances shall Transamerica be liable hereunder for any lost profits or for special, consequential or exemplary damages, even if Transamerica has been advised of the possibility of such damages.

**28. AMENDMENTS**

This Lease constitutes the general terms and conditions between Transamerica and Lessee for the leasing of Equipment. Additional and different terms may be provided for between the Parties providing the same are in writing and signed by the Parties hereto.

**29. EFFECTIVE DATE**

This Lease shall become binding upon the Parties hereto upon its acceptance and execution by Transamerica at its office set forth above.

**30. PARAGRAPH HEADINGS**

The paragraph headings in this Lease are for convenience only and shall not be deemed to alter or affect any provision hereof.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Lease to be signed by their duly authorized officers this

_____1st_____ day of _____June_____, 19 _92_ .

_____
Lessee

By _T. V. N. KUTTY_

_Managing Director_
(Type name and title of signing officer)

ACCEPTED AT WHITE PLAINS, NEW YORK, U.S.A.
TRANSAMERICA LEASING INC.

By _____
Paul J. Capodanno
**Executive Vice President Intermodal**
(Type name and title of signing officer)

**IMPORTANT:** By the execution of this Lease, Lessee incurs no obligation unless and until Equipment is taken on lease

# EXHIBIT B



TAL International Container
Corporation
100 Manhattanville Road
Purchase, NY 10577-2135
Telephone 914 251-9000
Fax 914 697-2720

LEASE ADDENDUM dated October 1, 2007 ("Addendum") and incorporated into the Master Lease Agreement dated June 1, 1992 ("MLA") between **TAL INTERNATIONAL CONTAINER CORPORATION f/k/a TRANSAMERICA LEASING INC.**, a Delaware corporation, with its principal place of business at 100 Manhattanville Road, Purchase, N.Y. 10577 ("TAL") and **IAL CONTAINER LINE (UK) LTD.**, incorporated under the laws of the United Kingdom, with its principal place of business at 401 Al Jawaharah Building, P.O. Box 23485, Dubai, United Arab Emirates ("Lessee").

NOW, THEREFORE, the parties agree as follows:

**A. Term**

The term of this Addendum, exclusive of the Build-Down Period as defined below, will commence on September 1, 2007 and expire on August 31, 2008 ("Term").

**B. Equipment**

This Addendum will cover the following containers ("Units"):

1.   Units currently on hire to Lessee under TAL billing code IDAK9; and

2.   Units to be made available for rental to Lessee in accordance with the terms of this Addendum, including the following:

| |
|---|
| 20', 40' dry cargo ("DC") Units |
| 20', 40' flush folding flat rack ("FR") Units |
| 20' and 40' open top ("OT") Units |

**C. Pickup and Redelivery of Units**

1.   Pickup

Subject to availability and upon request, TAL will make Units available for pickup by Lessee at TAL depots in (i) Bombay, for Nil pickup fees, and (ii) locations other than Bombay, for mutually agreed upon pickup fees or credits.

2.   Redelivery

a.   During the Term, Lessee may redeliver DC Units (i) to TAL depots in Bombay, Bangkok, Djakarta and Laem Chabang, subject to Nil redelivery fees and redelivery limitations of 15 Units per month per location, and (ii) on request and at the option of TAL, to TAL depots in locations other than Bombay, Bangkok, Djakarta and Laem Chabang, for redelivery fees or credits to be mutually agreed upon prior to redelivery.

| |
|---|
| TAL billing code: "IDAK9" |





2 of 3

   b.   During the Term, Lessee may redeliver OT and FR Units to TAL depots in Bombay, subject to Nil redelivery fees and redelivery limitations of 5 Units per month per equipment type.

   3.   Right to Change Service Conditions

   TAL may, upon 30 days' written notice to Lessee, initiate and/or change pickup and redelivery locations, fees, credits and/or redelivery limitations in the locations listed in C.1. and C.2.

   4.   Direct Interchange of Units

   Lessee may interchange Units to and/or from third parties for an administrative fee of US$50.00 per interchange after receiving the prior consent of the TAL Regional Co-Ordination Center or other designated TAL location. The supplying party will remain liable and responsible for the Units until TAL receives written notification from the receiving party of the interchange. The interchange will be effective upon the date of notification and the receiving party will assume liability and responsibility for the Units.  TAL must be notified of the interchange within 30 days of the interchange taking place and prior to the return of the Units to TAL. Failure to comply with all of the foregoing will subject the supplying party to continuing liability and responsibility for the Units, including but not limited to the per diem rentals therefore.

**D.   Per Diem Rates and Depot Handling Fees**

   1.   The per diem rate per Unit will be as follows:

| Equipment Type | Per Diem Rate Per Unit (U.S.$) |
|---|---|
| 20' DC | 1.08 |
| 40' DC | 2.50 |
| 20' FR | 2.25 |
| 40' FR | 4.50 |
| 20' OT | 2.30 |
| 40' OT | 4.00 |

   2.   Lessee will pay a depot handling fee of U.S.$25.00 and U.S.$35.00 per 20' and 40' Unit, respectively, at the time of pickup and at the time of redelivery.

**E.   Redelivery of Units During the Build-Down Period**

   1.   At the expiration of the Term, there will be a period of 3 months ("Build-Down Period") during which Lessee will redeliver to TAL all Units on hire in accordance with C.2. hereof.

   2.   Any Unit remaining on hire to Lessee after the Build-Down Period will be subject to the TAL short term per diem rate set forth below.

| TAL billing code: "IDAK9" |
|---|



3 of 3

| Equipment Type | Short Term Per Diem Rate Per Unit (U.S.$) |
|----------------|-------------------------------------------|
| 20' DC | 2.03 |
| 40' DC | 3.75 |
| 20' FR | 3.38 |
| 40' FR | 6.75 |
| 20' OT | 3.45 |
| 40' OT | 6.00 |

Lessee will redeliver such Unit to a depot as directed by TAL and Lessee will pay the TAL redelivery fee then prevailing at such depot.  Nothing contained herein, however, will be construed as giving Lessee the right to retain a Unit on hire after the expiration of the Build-Down Period.  The terms of this Paragraph will survive the termination of this Addendum.

**F.   General Terms and Conditions**

Lessee will pay all invoices in full, without and deduction or set off, in accordance with the terms of the MLA.


**IAL CONTAINER LINE (UK) LTD.**

By: MANIKANDAN KONHATTIC

Title: GENERAL MANAGER


**TAL INTERNATIONAL
CONTAINER CORPORATION**

By: _____

Adrian Dunner
Title Senior Vice President

TAL billing code: "IDAK9"

# EXHIBIT C



TAL International Container
Corporation
100 Manhattanville Road
Purchase, NY 10577-2135
Telephone 914 251-9000
Fax 914 697-2720

LEASE ADDENDUM dated December 1, 2007 ("Addendum") and incorporated into the Master Lease Agreement dated June 1, 1992 ("MLA") between **TAL INTERNATIONAL CONTAINER CORPORATION f/k/a TRANSAMERICA LEASING INC.**, a Delaware corporation, with its principal place of business at 100 Manhattanville Road, Purchase, New York 10577-2135, U.S.A. ("TAL") and **IAL CONTAINER LINE (UK) LTD.**, incorporated under the laws of the United Kingdom, with its principal place of business at P.O. Box 23485, Dubai, United Arab Emirates ("Lessee").

NOW, THEREFORE, the parties agree as follows:

## A. DATES

| Build-Up Period* | Commences from the first day of delivery *Lessee will not be charged per diem during Build Up Period |
|---|---|
| Term | Five (5) year Term will start on the first day of the month following delivery of units. |

## B. Pickup of Equipment

1. TAL will deliver 300 20'x8'6" dry cargo ("DC") containers ("Units") after Chinese New Year, mid-February, 2008, to Lessee at Lessee's container yard in Shanghai. Units must be picked up by Lessee within 60 days of production. Units will be billed under TAL billing code MIDA2F.

2. TAL will deliver 300 20'x8'6" dry cargo ("DC") containers ("Units") in March, 2008, to Lessee at Lessee's container yard in Shanghai. Units must be picked up by Lessee within 60 days of production Units will be billed under TAL billing code MIDA2F/-001.

3. TAL will deliver 400 20'x8'6" dry cargo ("DC") containers ("Units") in April, 2008, to Lessee at Lessee's container yard in Shanghai. Units must be picked up by Lessee within 60 days of production. Units will be billed under TAL billing code MIDA2F/-002.

## C. Rental Commitment

| TAL Billing Codes | Minimum Commitment |
|---|---|
| MIDA2F | 300 Units |
| MIDA2F/-001 | 300 Units |
| MIDA2F/-002 | 400 Units |

## D. Per Diem Rate and Depot Handling Fees

1. The per diem rate per Unit will be U.S.$1.35

| TAL billing code: "MIDA2F/-001/-002" |
|---|





2 of 6

2.  Lessee will pay depot handling fees as per the below. If Lessee exercises the purchase option as set forth in E. hereof, then at the expiration of the Term, depot handling fees will not be billed.

| Depot Handling Fees | |
| --- | --- |
| Pickup | Redelivery |
| Nil | Prevailing |

**E.  Purchase Option**

1.  Subject to (i) the payment of all amounts required to be paid hereunder, (ii) the performance by Lessee of all the covenants and obligations which it is required to perform under this Addendum, the MLA and any and all other agreements between Lessee and TAL, and (iii) the non-occurrence, at or prior to the expiration of the Term, of any default or event of default under this Addendum or under any of the aforesaid agreements, then, upon the expiration of the Term, Lessee may purchase on an "AS IS, WHERE IS" basis all, but not less than all, of the Units on hire hereunder for the sum of U.S.$1.00 per Unit, together with any applicable sales tax thereon.

2.  Lessee will give TAL 60 days' advance written notice of its intent to exercise the purchase option herein. Lessee will continue to pay per diem rent to TAL until full payment of the purchase price has been received by TAL. Upon payment of the purchase price and applicable taxes, TAL will issue, or cause to be issued, a bill of sale transferring title to such Units to the Lessee.

3.  All taxes, fees and charges, duties and other governmental charges (except income or capital gain taxes imposed on TAL by the U.S. Government or any state, city or political subdivision of the U.S.) including, but not limited to, sales and use taxes arising out of the sale of the Units, shall be borne by Lessee.

4.  If Lessee does not exercise this option, Units shall be redelivered to TAL in accordance with F. hereof.

**F.  Redelivery of Units**

1.  If Lessee does not purchase Units as set forth in E. hereof, then at the expiration of the Term, there will be a period of 3 months ("Build-Down Period") during which Lessee will redeliver Units on hire to TAL in quantities and to locations as TAL will designate in writing to Lessee.

2.  Any Unit remaining on hire to Lessee after the Build-Down Period will be subject to the TAL short term per diem rate of U.S.$2.03. Lessee will redeliver such Unit to a depot as directed by TAL and will pay the TAL redelivery fee then prevailing at such depot. Nothing contained herein, however, may be construed as giving Lessee the right to retain a Unit on hire after the expiration of the Build-Down Period. The terms of this Paragraph will survive the termination of this Addendum.

| TAL billing code: " MIDA2F/-001/-002" |
| --- |





3 of 6

### G.  Payment Conditions

On the first day of each month during the Term, Lessee will pay TAL an amount equal to the Rental Commitment, times the applicable per diem rate, times the number of days in such month ("Monthly Rent").

### H.  General Terms & Conditions

1.    a.    TAL and Lessee agree that this Addendum is and is intended to be a true lease (and not a lease intended as security or a lease in the nature of a security interest), that TAL is the owner of the Units and that Lessee has no rights to the Units except as expressly provided in this Addendum.

b.    Notwithstanding H.1.a. above, Lessee, as debtor, grants a security interest to TAL, as secured party in any and all rights, title and interest which Lessee now or may hereafter have in the Units.  This grant of a security interest shall not affect adversely the interpretation of this Addendum as a true lease.

c.    Lessee agrees to execute and deliver to TAL any and all instruments and documents that may be reasonably necessary to protect TAL's interest under this Addendum.

d.    TAL as secured party may (without cost to Lessee) file financing statements without the signature of Lessee, as debtor.

2.    TAL will receive from Lessee an executed Certificate of Acceptance (in a form acceptable to TAL) with respect to each Unit.

### I.  Conditions Precedent

TAL agrees to lease the Units to Lessee, subject to the following conditions:

1.    TAL shall have issued its purchase orders for the Units and the manufacturer shall have manufactured and delivered the Units in accordance with the purchase order.  Lessee acknowledges that TAL is not the manufacturer of the Units and thus TAL shall have no liability if the manufacturer fails to manufacture or deliver the Units.

2.    The representations and warranties contained in Section K. shall be true and accurate on and as of each Acceptance Date as though made on and as of such date and TAL shall have received an officer's certificate to that effect in form and substance satisfactory to counsel for TAL.

3.    No event shall have occurred and be continuing or would result from the lease of the Units which constitutes or would constitute, an Event of Default hereunder.

┌─────────────────────────────────────┐
│ TAL billing code:  " MIDA2F/-001/-002" │
└─────────────────────────────────────┘





4 of 6

4.    No event or condition shall have occurred which, in the reasonable determination of TAL, has resulted in a material adverse change in the financial condition, business, properties or profits of Lessee or which gives TAL reasonable grounds to conclude that Lessee may not be able to perform or observe (in the normal course) its obligations hereunder.

5.    TAL shall have received an opinion of counsel for Lessee in form and substance satisfactory to counsel for TAL providing, among other things, that (i) this Addendum has been duly authorized and executed by Lessee and is valid and enforceable under the laws of United Kingdom; (ii) the representations and warranties set forth in Section K. below are true and correct and that (iii) all actions have been taken, including required filings, necessary to protect TAL's interest in the Units.

6.    TAL shall have received a certificate from the corporate secretary or other officer of Lessee in a form acceptable to counsel for TAL containing the specimen signatures of the officers of Lessee and certifying that they are the duly elected officers of Lessee.

7.    TAL shall have received a resolution of the Board of Directors of Lessee authorizing this Addendum in a form acceptable to counsel for TAL and certified to by the corporate secretary of Lessee.

8.    TAL shall have received a certificate of insurance evidencing the insurance required by the MLA.

9.    TAL shall have received a true and correct copy of the Articles of Association and By-Laws of Lessee certified to by the corporate secretary of Lessee.

**J.    Net Lease**

This Addendum is a net lease, and Lessee shall not be entitled to any abatement or reduction of rent or setoff against rentals, including, but not limited to, abatements, reductions or setoffs due or alleged to be due to, or by reason of, any past, present or future claims of Lessee against TAL under this Addendum or any other agreement or otherwise or against any person having a beneficial interest in any Unit. Except as otherwise expressly provided herein, this Addendum shall not terminate, nor shall the obligations of TAL or Lessee be otherwise affected, by reason of any defect in or damage to or loss of possession or loss of use of or destruction of all or any of the Units from any cause, the prohibition of or other restriction against Lessee's use of all or any of such Units, the interference with such use by any person, the invalidity or unenforceability or lack of due authorization of this Addendum, or by reason of any failure by TAL to perform any of its obligations herein contained, or for any other cause. It is the intention of the parties that the rentals and other amounts payable by Lessee shall continue to be payable in all events in the manner and at the times provided in this Addendum unless the obligations to pay the same shall be terminated pursuant to this Addendum.

TAL billing code:  " MIDA2F/-001/-002





5 of 6

### K.    Representations and Warranties of Lessee

Lessee represents and warrants that:

(a)  Lessee is a corporation legally incorporated and validly existing, in good standing, under the laws of United Kingdom, has full corporate power and authority to enter into and conduct its business as presently conducted and as contemplated in this Addendum and has full corporate power and authority to enter into this Addendum.

(b)  Lessee is duly qualified or licensed to do business in all jurisdictions where the character of the property owned or leased or the nature or extent of the business conducted by it makes such licensing or qualification necessary.

(c)  Lessee's principal place of business is shown in the introductory paragraph of the Addendum.

(d)  The Addendum has been fully authorized, executed and delivered by Lessee and constitutes a valid, legal and binding agreement, enforceable in accordance with its terms.

(e)  No filing, recording or deposit (or giving of notice) with any person is necessary in order to protect the title in, and interest of, TAL in and to the Units.

(f)  No consent, approval or exemption is required from any person with respect to the entering into or performance of this Addendum by Lessee.

(g)  The entering into and performance by Lessee of this Addendum will not result in the breach of, or constitute a default under, any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument to which Lessee is a party or by which it may be bound and does not and will not conflict with, result in a violation of, or constitute a default under, any provision of Lessee's Certificate of Incorporation or Bylaws or any governmental regulation or court order or decree.

(h)  There are no suits or proceedings pending or, to the knowledge of Lessee, threatened in any court or before any regulatory commission, board or other administrative governmental agency against or affecting Lessee which, if determined against Lessee, would impair its ability to enter into this Addendum or perform its obligations under this Addendum.

(i)  The Certificates of Acceptance and this Lease Addendum when executed and delivered by Lessee will constitute legal, valid and binding obligations enforceable in accordance with their terms.

(j)  Lessee has obtained all required exchange control approvals in order for it to make payment of all rentals and additional rent due under this Addendum and such approvals have not been revoked, cancelled or materially changed, and all conditions attaching to the approvals have been complied with in all respects.

| TAL billing code: " MIDA2F/-001/-002" |
| --- |





6 of 6

(k)   Except for those in favor of TAL, no mortgage, deed of trust or other lien of any nature whatsoever which now covers or affects or which may hereafter cover or affect any property or interest therein of the Lessee, now attaches, or hereafter will attach to the Units or in any manner affects or will affect adversely the TAL's right, title and interest therein.

IAL CONTAINER LINE (UK) LTD.

By: _____

Title: _____

TAL INTERNATIONAL
CONTAINER CORPORATION

By: _____

Title: _____

Adrian Dunner
Senior Vice President

TAL billing code: " MIDA2F/-001/-002

Ref.#7598

S:\contracts\contain\Nidaxx\ida2f-001/-002.doc

# EXHIBIT D



TAL International Container
Corporation
100 Manhattanville Road
Purchase, NY 10577-2135
Telephone 914 251-9000
Fax 914 697-2720

## AMENDMENT

AMENDMENT dated November 1, 2008 ("Amendment") to the Lease Addendum dated October 1, 2008 ("Addendum") between **TAL INTERNATIONAL CONTAINER CORPORATION f/k/a TRANSAMERICA LEASING INC.** ("TAL") and **IAL CONTAINER LINE (UK) LTD.** ("Lessee").

NOW, THEREFORE, the parties agree as follows:

1.   Dubai is hereby added as a redelivery location for 20' DC Units in Paragraph C.2.a. of the Addendum, with Nil redelivery fees, and redelivery limitations of 15 Units per month.

2.   All other terms and conditions of the Addendum will apply.

3.   The terms used herein will have the same meaning as in the Addendum.

IAL CONTAINER LINE (UK) LTD.

By: MANIKANDAN

Title: General Manager

TAL INTERNATIONAL
CONTAINER CORPORATION

By: _____

Title: Adrian Dunner
Senior Vice President

TAL billing code: "IDAK9"

Rec.#8306
s:\contracts\contain\iidaxx\am4idak9.doc

# EXHIBIT E



**TAL INTERNATIONAL CONTAINER CORPORATION**
100 Manhattanville Road
Purchase, New York 10577-2135, U.S.A.
Telephone 914 251 9000
Direct Telephone 914 697 2554
Fax 914 697 2526
Email:  marc.pearlin@talinternational.com

*VIA EMAIL (mani@ial.com) and FAX (009714 3516867)*

September 11, 2009

Manikandan Kongattil, General Manager
IAL Container Line (UK) Ltd.
P.O. Box 23485
Dubai
United Arab Emirates

> **Re:**  **Master Lease Agreement dated June 1, 1992 and Lease Addenda dated October 1, 2007 and December 1, 2007, as amended, collectively known as the "Leases"**

Dear Sirs:

As you were previously informed in my letter to you dated June 8, 2009, IAL Container Line (UK) Ltd. is in default of the above-mentioned lease agreements.  As of September 1, 2009, IAL owes TAL International Container Corporation ("TAL") at least US$137,093.69 in unpaid rental and other charges for the equipment on hire under the Leases. In addition, I hereby notify you that TAL is hereby exercising its right under the Master Lease Agreement to declare for all term leases the entire unpaid balance of the rent for the entire term of the Leases of US$1,846,416.25 to be immediately due and payable.

So the total amount now owed is US$1,983,509.94. We demand the immediate payment of this amount. TAL also intends to pursue all of its legal remedies under the Lease and applicable law.

Sincerely,

TAL International Container Corporation

By:  *Marc Pearl*

Marc Pearlin
Vice President, General Counsel & Secretary

EXHIBIT F

SCHEDULE A

| CONTRACT | INV NO. | DATE | AMOUNT |
|---|---|---|---|
| IDAK9   000 | 0905000402 | 2009-05-31 | 3,241.44 |
| MIDA2F-001 | 0905110037 | 2009-05-31 | 1,250.00 |
| IDAK9   000 | 0906000383 | 2009-06-30 | 2,347.20 |
| Interest (On Previous Lateness) | N9I-006001 | 2009-06-30 | 342.93 |
| MIDA2F  000 | 0904002312X | 2009-07-01 | 12,555.00 |
| MIDA2F  001 | 0904002313X | 2009-07-01 | 12,555.00 |
| MIDA2F  002 | 0904002314X | 2009-07-01 | 16,740.00 |
| IDAK9   000 | 0907000369 | 2009-07-31 | 2,413.44 |
| MIDA2F  000 | 0905002272X | 2009-08-01 | 12,555.00 |
| MIDA2F  001 | 0905002273X | 2009-08-01 | 12,555.00 |
| MIDA2F  002 | 0905002274X | 2009-08-01 | 16,740.00 |
| IDAK9   000 | 0908000364 | 2009-08-31 | 3,298.68 |
| MIDA2F  000 | 0906002272X | 2009-09-01 | 12,150.00 |
| MIDA2F  001 | 0906002273X | 2009-09-01 | 12,150.00 |
| MIDA2F  002 | 0906002274X | 2009-09-01 | 16,200.00 |
| | | Subtotal - Unpaid Installments | 137,093.69 |

| | | | |
|---|---|---|---|
| IDAK9 000 + MIDA2F 000-002 | UNBILLED | ACCELERATED | 1,846,416.24 |

| | |
|---|---|
| Total | 1,983,509.93 |